IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| APRILE VAZZANO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:21-CV-0825-D |
| VS. | § | |
| | § | |
| RECEIVABLE MANAGEMENT | § | |
| SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Aprile Vazzano ("Vazzano") asserting claims for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Texas Debt Collection Practices Act, Tex. Fin. Code Ann. §§ 392.001-.404 (West 2016) ("TDCPA"), defendant Receivable Management Services, LLC ("RMS") moves under Fed. R. Civ. P. 12(c) for judgment on the pleadings. For the following reasons, the court grants the motion but also grants Vazzano's alternative request for leave to amend.

I

The pertinent facts are straightforward.[1] Vazzano is a debtor of Progressive Advanced Insurance Company ("Progressive"). In February 2020 Progressive transferred Vazzano's debt to RMS for collection. Shortly thereafter, Vazzano sent the following letter to RMS,

---

[1]In deciding RMS's Rule 12(c) motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in her favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

by certified mail, return receipt requested, dated March 5, 2020:

> Re: Reference No. [redacted]00 (Progressive Insurance)
>
> To whom this may concern,
>
> This letter is in response to the collection notice I received from your agency in regard to the above referenced matter.
>
> Please be advised that alleged debt is hereby being disputed, your client is fully aware that no such funds are owed to them, thus I refuse to pay.
>
> I have been in direct contact with your client concerning this issue and expect it to be fully resolved within the next few weeks.  Formal notice is hereby given to you that all further communication shall be in writing only so that no facts are misconstrued.
>
> Respectfully,
>
> Aprile Vazzano

ECF 6-1.

RMS received the letter a few days later.  On November 11, 2020 RMS sent Vazzano a collection letter regarding the Progressive debt.  Vazzano responded by filing this lawsuit a few months later, alleging claims against RMS for violating the FDCPA and TDCPA.  Her complaint alleges that RMS's November 11, 2020 letter violated §§ 1692c(c), 1692d, and 1692f of the FDCPA and unspecified sections of the TDCPA.

RMS now moves under Rule 12(c) for judgment on the pleadings.  Vazzano opposes the motion.  The court is deciding the motion on the briefs.

II

Rule 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion.") (citation and internal quotation marks omitted).

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the defendant's motion, the plaintiff's pleadings must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the

- 3 -

mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555).

"The court's review [of a Rule 12(c) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion [for judgment on the pleadings] that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III

### A

RMS contends that Vazzano's claim under § 1692c(c) of the FDCPA must be dismissed because it is based on an allegation that is directly controverted by the contents of her March 5, 2020 letter.

In response, Vazzano appears to principally argue that, under § 1692c(c) and the TDCPA, RMS was obligated as a debt collector to stop collection activity once Vazzano sent a letter notifying RMS that she refused to pay the debt.  In other words, Vazzano posits that she was not required to specifically request that RMS cease all communications with her

- 4 -

because, under the plain language of the FDCPA, once she refused to pay the debt, this action was sufficient under the statute to trigger RMS's obligation to cease and desist. Vazzano also contends that she did not request further communications from RMS but only asked that RMS document its communications with her.[2]

B

Vazzano's complaint alleges that RMS's November 11, 2020 letter violated 15 U.S.C. § 1692c(c) because, "despite [Vazzano's] written request to stop contacting her, [RMS] continued to send a collection letter on November 11, 2020, and, consequently, [RMS] violated 15 U.S.C. § 1692c(c)."  Compl. at 4, ¶ 25.  But this allegation is refuted by the March 5, 2020 letter itself, which the court can consider at the Rule 12(c) stage as a document essentially quoted in full in RMS's motion[3] that is central to Vazzano's claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387.  The March 5, 2020 letter contains no request that RMS stop contacting Vazzano.  What the letter *does* contain is Vazzano's "[f]ormal notice . . . that all *further communication* shall be in writing only so that no facts are misconstrued."  ECF 6-1 (emphasis added).

---

[2]Vazzano also maintains that RMS's contention that, by asking RMS to put all further communications in writing, she "welcomed" further communications from RMS ignores the plain language of her March 5, 2020 letter and of the FDCPA.  She contends that, at most, RMS is arguing that she waived her FDCPA rights—and RMS's obligation to cease and desist further collections—by asking RMS for only written communications.  The court need not address the issue of waiver to decide the present motion.

[3]The letter is not actually attached to RMS's motion, but a photocopy of the salutation and three operative paragraphs is inserted within the motion itself.  RMS has accomplished the functional equivalent of attaching the letter to its motion for judgment on the pleadings.

- 5 -

Vazzano's contention that the plain language of her March 5, 2020 letter reflects that she did not ask for further communications but only requested that RMS document its communications with her is likewise contradicted by her March 5, 2020 letter.

C

The court need not address what appears to be Vazzano's principal opposition argument because it is based on a predicate for liability that she did not plausibly plead in her complaint. Vazzano contends that, under § 1692c(c), a debt collector may not contact a consumer who, *inter alia*, notifies the debt collector in writing that she refuses to pay a debt. Although the consumer can also give the debt collector a cease-and-desist notification, only one of the two requirements need be satisfied. Vazzano maintains that she sent RMS a written refusal-to-pay notification, thus triggering RMS's obligation to cease and desist further debt collection communications, but RMS violated this obligation, and § 1692c(c), when it sent Vazzano the November 11, 2020 collection letter.

But as RMS points out in reply, "[i]mportantly, Plaintiff's Complaint does not allege that RMS violated § 1692c(c) because it communicated with Plaintiff after she advised that she would not make payment on the debt." D. 6-22-2021 Reply 2. Vazzano cannot avoid judgment on the pleadings by relying on a basis for liability under § 1692c(c) that is not plausibly pleaded. In determining whether Vazzano has met the plausibility standard, the court will not consider the contents of her response brief that exceed what is actually pleaded in her complaint. *See Leal v. McHugh*, 731 F.3d 405, 407 n.2 (5th Cir. 2013); *Roubinek v. Select Portfolio Servicing Inc.*, 2012 WL 2358560, at *3 n.2 (N.D. Tex. June 21, 2012)

- 6 -

(Fitzwater, C.J.) (first citing *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 263 (5th Cir. 2008); and then citing *Coach, Inc. v. Angela's Boutique*, 2011 WL 2634776, at *2 (S.D. Tex. July 5, 2011) (Rosenthal, J.) ("Allegations contained in a response to a motion to dismiss are not appropriately considered in a Rule 12(b)(6) motion, which evaluates the sufficiency of the complaint itself and does not consider allegations not contained in the pleadings.") (citations omitted)).

Accordingly, the court grants RMS's motion for judgment to the extent addressed to Vazzano's claim under § 1692c(c).

IV

RMS also moves for judgment on the pleadings as to Vazzano's claims under §§ 1692d and 1692f of the FDCPA.

A

RMS maintains that Vazzano's complaint only alleges one instance of potential misconduct—the sending of the November 11, 2020 letter—and that this single act is insufficient to establish "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" under § 1692d, or "unfair or unconscionable means" under § 1692f. Alternatively, RMS posits that § 1692f does not apply because it does not cover instances of misconduct that are addressed by another section of the FDCPA.

Citing only *Perez Alvarez v. Medicredit*, 2018 WL 6430830 (W.D. Tex. Aug. 2, 2018), Vazzano maintains that RMS's conduct violated both § 1692d and § 1692f.

- 7 -

B

Section 1692d provides, in pertinent part, that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  The statute specifies conduct that is a violation of § 1692d, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  § 1692d(5).

The Fifth Circuit has not addressed § 1692d and determined what is "conduct the natural consequence of which is to harass, oppress, or abuse."  *Baye v. Midland Credit Mgmt., Inc.*, 2017 WL 4918998, at *6 (E.D. La. Oct. 31, 2017).  But other circuit and district courts have.  For example, in *Dixon v. Stern & Eisenburg, PC*, 652 Fed. Appx. 128 (3d Cir. 2016) (per curiam), the Third Circuit held that mailing six copies of notices to the debtor did not violate § 1692d.  *Id.* at 133.  Similarly, a district court in this circuit has held that sending three letters to the debtor about the debt was legally insufficient to state a claim because "the level of harassment contemplated by the statute requires more than the mere sending of a few letters."  *Baye*, 2017 WL 4918998, at *6; *see also Birdow v. Allen*, 2013 WL 4511639, at *3 (W.D. Tex. Aug. 23, 2013) (holding that sending two letters was insufficient to state a claim under § 1692d).  Some judges, however, including a member of this court, have declined to dismiss claims based on unwanted communications, particularly when they may violate another provision of the FDCPA, such as the one against contacting a represented debtor.  *See Harding v. Regent*, 347 F.Supp.2d 334, 336-37 (N.D. Tex. 2004) (Means, J.) (denying

motion to dismiss because "repetitive communication" over many months even after the plaintiff had already filed suit and was represented by counsel could constitute a violation of § 1692d.

Because there are only a few cases interpreting the general prohibition of harassment prescribed in § 1692d, the court looks for instruction to cases interpreting § 1692d(5), one of the categories of conduct that § 1692d specifies as being "a violation of" that section. As noted above, § 1692d(5) applies to behavior that involves "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

Courts have analyzed violations of § 1692d(5) by looking to "the frequency, pattern, or substance of the telephone calls that [the debtor] received from the debt collector or the place to which the calls were made." *Enis v. Bank of Am., N.A.*, 2013 WL 1721961, at *5 (N.D. Tex. Apr. 22, 2013) (Fitzwater, C.J.) (citing *Young v. Asset Acceptance, LLC*, 2011 WL 1766058, at *3 (N.D. Tex. May 10, 2011) (Ramirez, J.)); *see also Pugliese v. Prof'l Recovery Serv., Inc*., 2010 WL 2632562, at *9 (E.D. Mich. June 29, 2010) (considering "volume of calls ... along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct"). "There is no bright line rule as to the specific amount or pattern of calls sufficient to raise a fact issue regarding the intent to annoy, abuse, or harass; courts simply disagree on the amount or pattern of calls needed to raise a triable fact issue." *Enis*, 2013 WL 1721961, at *5 (citing *Young,* 2011 WL 1766058, at *3). "Where courts have found that collection calls were intended to harass or abuse, 'a high

- 9 -

volume of phone calls is typically accompanied by allegations of other objectionable conduct.'" *Perez Alvarez*, 2018 WL 6430830, at *4 (quoting *Clayton v. Asset Plus Cos., LP*, 2014 WL 6388430, at *3 (S.D. Tex. Nov. 14, 2014)).

Vazzano cites only one case, *Perez Alvarez*, in support of her claim. The *Perez Alvarez* court dealt with § 1692d(5) and found that 33 calls without accompanying objectionable conduct was "at the very low end of the spectrum of what is reported in the other cases" and therefore did *not* violate the statute as a matter of law. *Id.* at *4-5 (collecting cases). Indeed, courts normally require extreme misconduct to find a violation of this provision. *Adamcik v. Credit Control Servs., Inc*., 832 F.Supp.2d 744, 747 (W.D. Tex. 2011) (upholding jury finding of intent to harass under FDCPA where collection agency called debtor at least 134 times in 40-day period, phoned both of debtor's telephones simultaneously, violated company policy about waiting 10 days to call again if debtor requested that calls stop, and threateningly implied that high volume of calls would not stop until debt was paid); *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 78, 84-85 & n.8 (Tex. App. 1998, pet. denied) (noting, in addressing invasion of privacy claim, that collection agents' actions would have also violated § 392.302(4), where agents used abusive and vulgar language, called debtor at work despite requests not to do so, and called her home at 6:30 a.m. on some weekends and after 11:00 p.m. on weekdays).

The court acknowledges that the § 1692d(5)-based cases to which it is referring for guidance involve phone calls, not letters. Telephone calls can by nature be more intrusive, harassing, and abusive than letters. *See Masuda v. Thomas Richards & Co.*, 759 F. Supp.

- 10 -

1456, 1465 (C.D. Cal. 1991) (finding that "letters represent the least intrusive means of communicating with debtors"). But this means that if conduct engaged in by phone does not violate § 1692d, corresponding conduct carried out by letter would not either.

Vazzano alleges in her complaint that the sending of one communication—the November 11, 2020 letter—constituted harassing conduct. The complaint does not plead additional objectionable conduct. The cases to which the court has referred for guidance have found violations of §§ 1692d and 1692d(5) only when there were multiple harassing calls or letters combined with other objectionable conduct.

Although in *Harding* Judge Means declined to grant a motion dismiss despite a low number of debt collection communications, *Harding*, 347 F.Supp.2d at 336-37, the differences between the court's decision in this case and Judge Means's ruling in *Harding* can be harmonized based on their disparate facts. *Harding* involved at least four communications (both via telephone and letter) that the debtor received at his home over the course of several months after the debtor had already filed suit and secured legal representation. *Id.* at 335-37. In the present case, by contrast, Vazzano alleges just one isolated communication that occurred in one month. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. RMS's one letter, unaccompanied by other objectionable conduct, is insufficient to state a plausible claim for relief under § 1692d.

- 11 -

C

Section 1692f of the FDCPA provides, in pertinent part, that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The statute specifies conduct that is a violation of § 1692f. Because of the broad remedial purpose of the FDCPA, the court views a debt collector's potentially deceptive actions from the perspective of a "unsophisticated or least sophisticated consumer." *Salinas v. R.A. Rogers, Inc.*, 952 F.3d 680, 683 (5th Cir. 2020) (internal quotations omitted).

It is unsettled whether conduct that violates one part of the FDCPA may also count as a violation of § 1692f. *See Reynolds v. Medicredit, Inc.*, 2019 WL 266974, at *5 (W.D. Tex. Jan. 18, 2019) ("[T]he Supreme Court has not 'had the occasion to construe the terms "unfair" or "unconscionable" in § 1692f'") (citing *Midland Funding, LLC v. Johnson*, ___ U.S. ___, 137 S. Ct. 1407, 1418 n.4 (2017) (Sotomayor, J., dissenting)). The Fifth Circuit has not addressed the relationship between § 1692f and other FDCPA provisions. *See Houser v. LTD Fin. Servs. LP*, 512 F.Supp.3d 746, 752 (S.D. Tex. 2021). But there is a growing consensus among district courts that a violation of § 1692f cannot be based on conduct that constitutes a violation of another provision of the FDCPA. *See Winberry v. United Collection Bureau, Inc.*, 697 F.Supp.2d 1279, 1292 (M.D. Ala. 2010) (highlighting "a growing consensus at least among district courts, that a claim under § 1692f must be based on conduct either within the listed provisions, or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA."). Judges of this court have consistently followed this rule. *See Krier v. United Revenue Corp.*, 2020 WL

- 12 -

2065618, at *6 (N.D. Tex. Apr. 28, 2020) (Fish, J.); *Alvarado Martinez v. Eltman L., P.C.*, 444 F.Supp.3d 748, 755 (N.D. Tex. 2020) (Boyle, J.); *Cox v. Hilco Receivables, L.L.C.*, 726 F.Supp.2d 659, 666 (N.D. Tex. 2010) (Lynn, J.).  District courts elsewhere in this circuit have also done so.  *See Cook v. Credit Sys. Int'l, Inc.*, 2020 WL 5797715, at *4 (E.D. Tex. Sept. 10, 2020), *rec. adopted*, 2020 WL 5764363 (E.D. Tex. Sept. 28, 2020); *Nolan v. Account Control Tech., Inc.*, 2018 WL 1903147, at *5 (W.D. Tex. Feb. 23, 2018); *Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 878 (S.D. Tex. 2011) (Rosenthal, J.).  At the same time, however, there exists "tension—if not outright conflict" between this rule and the practice of other circuit courts, which have assumed that the same conduct *can* violate § 1692f and another provision of the FDCPA.  *Houser*, 512 F.Supp.3d at 753 (collecting cases).

Absent contrary controlling law, the undersigned joins the other judges of this court[4] and the other district courts that hold that "double counting" of conduct under § 1692f is prohibited.  Because RMS's conduct, if proved by Vazzano, would constitute a violation of § 1692c(c) (and thus be double-counted), and Vazzano has alleged no other misconduct, she has failed to plead a plausible claim under § 1692f.

---

[4]Although decisions of other judges of this court are not binding as the "law of the district," the undersigned "invariably gives serious and respectful consideration to the decisions of other judges of this court on questions of law—and typically follows them because they are usually correct and because predictability in such matters is desirable." *SEC v. Cuban*, 798 F.Supp.2d 783, 788 (N.D. Tex. 2011) (Fitzwater, C.J.).

V

RMS moves for judgment on the pleadings as to Vazzano's claims under Tex. Fin. Code Ann. §§ 392.001-392.404.

A

RMS and Vazzano both argue that the FDCPA and TDCPA are coextensive such that a violation (or lack of violation) under one controls under the other. Accordingly, each maintains that, if the court holds for her or it under the FDCPA, the court must also do so under the TDCPA.

B

The FDCPA and TDCPA are "isomorphic (that is, they share the same general structure but are identified by different names)." *Fiddick v. Bay Area Credit Serv., LLC*, 2019 WL 1858824, at *4 (S.D. Tex. Apr. 25, 2019). "The conduct prohibited under the [TDCPA] is coextensive with that prohibited under the FDCPA, at least insofar as the same actions that are unlawful under the FDCPA are also unlawful under the [TDCPA]." *Ortiz v. Enhanced Recovery Co.*, 2019 WL 2410081, at *6 (N.D. Tex. June 6, 2019) (Fitzwater, J.) (internal quotation marks and citation omitted). When neither party offers any authority for interpreting the TDCPA provisions at issue, the court will rule consistently on the same grounds for the TDCPA as it does for the FDCPA. *Id.*

Vazzano's complaint alleges that "[t]he foregoing acts and omissions constitute numerous violations of the TDCPA," without specifying which provision of the TDCPA RMS violated. The TDCPA, like the FDCPA, prohibits a variety of practices that are

- 14 -

threatening, coercive, harassing, abusive, unfair, or unconscionable. *See* Tex. Fin. Code §§ 392.301-392.304 (West 2016). The court has ruled against Vazzano on all of her claims under the FDCPA. Vazzano has not offered any authority to interpret the TDCPA differently. Accordingly, for the reasons explained when addressing Vazzano's claims under the FDCPA, the court grants RMS's motion as to Vazzano's TDCPA claims.

VI

Vazzano opposes RMS's motion. She requests in the alternative that she be granted leave to amend. The court grants the request.

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co.*, 313 F.3d at 329). Because Vazzano has not stated that she cannot, or is unwilling to, cure the defects that the court has identified, the court grants her 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

- 15 -

\*    \*    \*

Accordingly, for the reasons explained, the court grants RMS's May 18, 2021 motion for judgment on the pleadings, but also grants Vazzano's alternative request for leave to amend.

**SO ORDERED**.

August 24, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 16 -