IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

APRILE VAZZANO,                          §
                                         §
                    Plaintiff,           §
                                         §   Civil Action No. 3:21-CV-0825-D
VS.                                      §
                                         §
RECEIVABLE MANAGEMENT                    §
SERVICES, LLC, and RLI                   §
INSURANCE COMPANY,                       §
                                         §
                    Defendants.          §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Aprile Vazzano ("Vazzano") asserting claims for violations

of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the

Texas Debt Collection Practices Act, Tex. Fin. Code Ann. §§ 392.001-.404 (West 2016)

("TDCPA"), Vazzano moves for partial summary judgment on her § 1692c(c) claim, and

defendant Receivable Management Services, LLC ("RMS") cross-moves for summary

judgment on all of Vazzano's claims. For the reasons that follow, the court grants Vazzano's

motion for partial summary judgment and denies RMS's motion for summary judgment.

I

Vazzano purchased an automobile insurance policy (the "Original Policy") from

Progressive Advanced Insurance Company ("Progressive").[1]  The policy period for the

_____

[1]Because both sides move for summary judgment, the court will recount the evidence
that is undisputed, and, when it is necessary to set out evidence that is contested, will do so
favorably to the side who is the summary judgment nonmovant in the context of that

Original Policy ended on November 21, 2019. Vazzano made timely payments on the policy.

At the end of the policy period, Progressive gave Vazzano the option to renew her policy. The new policy period would run from November 21, 2019 to May 21, 2020 (the "Renewal Policy"). To renew, Vazzano could pay in installments, with the first installment due on November 21, 2019 for $142.86.[2] Vazzano could also call or go online to renew. If she did not renew, her policy with Progressive would end on November 21, 2019.

Although Vazzano contends she did not renew her policy, Progressive thought that she had,[3] so it sought the sum of $183.28 from Vazzano. When she did not pay this amount, Progressive transferred the debt to defendant RMS for collection.

On February 15, 2020 RMS sent Vazzano a debt collection letter (the "February letter"), which stated that it was an "attempt to collect a debt." P. App. (ECF No. 47) at 4. RMS offered Vazzano ways to pay the debt. It stated that Vazzano had 30 days to dispute the validity of the debt, and, if she did, that RMS would obtain verification of the debt and

---

evidence. *See, e.g.*, *GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

[2]This number later changed. Progressive sent a second letter, entitled "Renewal Reminder," on November 5, 2019. This letter stated that the cost of the initial installment for renewal was $152.86.

[3]A Progressive employee stated that Vazzano paid Progressive $152.86 on November 29, 2019, which was the first installment of the Renewal Policy. Progressive also sent a cancellation letter on January 2, stating that the Renewal Policy was canceled due to a lack of a second installment payment. Vazzano disputes paying Progressive and notes that Progressive sent her a cancellation letter on November 29, 2019 that said "you no longer have insurance with us, effective November 29, 2019 . . . ." P. App. (ECF No. 47) at 18.

send a copy of the verification.

On March 5, 2020 Vazzano sent a letter, by certified mail, return receipt requested, to RMS stating the following:

> Re: Reference No. [redacted in original] 9400 (Progressive Insurance)
>
> To whom this may concern,
>
> This letter is in response to the collection notice I received from your agency in regard to the above referenced matter.
>
> Please be advised that alleged debt is hereby being disputed, your client is fully aware that no such funds are owed to them, thus I refuse to pay.
>
> I have been in direct contact with your client concerning this issue and expect it to be fully resolved within the next few weeks.  Formal notice is hereby given to you that all further communication shall be in writing only so that no facts are misconstrued.
>
> Respectfully,
> Aprile Vazzano

*Id.* at 7.  RMS received the letter.[4]  Nevertheless, on November 19, 2020 RMS sent Vazzano another letter regarding the debt (the "November letter").  The November letter stated that there was "[e]nclosed . . . a copy of the information [Vazzano] requested regarding the debt," and it offered ways to pay off the debt.[5]  *Id.* at 12.  The letter also stated at the bottom that

---

[4]Vazzano mentions debt-collection phone calls that she received.  It appears that these calls were received *before* Vazzano sent her letter to RMS.

[5]The parties characterize the November letter differently.  Vazzano appears to regard it as a letter seeking payment of the debt, while RMS describes it as a "verification letter."

"[w]e are a debt collector attempting to collect a debt . . . ." *Id.*

Vazzano filed this lawsuit against RMS alone. After the court granted judgment on the pleadings in RMS's favor, Vazzano filed an amended complaint adding RLI Insurance Company as a defendant. After discovery, the parties now move for summary judgment. Vazzano moves for partial summary judgment on her § 1692c(c) claim,[6] while RMS moves for summary judgment on all of Vazzano's claims. Vazzano also objects to the declaration of Sharon B. Waddell (the "Waddell Declaration"), which RMS has filed in support of its motion for summary judgment.[7] The court is deciding the motions on the briefs.

## II

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v.*

---

[6]Vazzano does not move for judgment on the damages portion of her claim, which she contends should be decided by a jury.

[7]The court overrules this objection as moot because, assuming *arguendo* that the court can consider the Waddell Declaration (which is favorable to RMS), the court grants Vazzano the judgment she seeks, *infra* § IV(B), and denies RMS's motion for summary judgment.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet this burden.  *Little*, 37 F.3d at 1076.

To be entitled to summary judgment on a claim or defense on which the moving party will bear the burden of proof at trial, the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'"  *Bank One, Tex., N.A. v. Prudential Ins.Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the movant must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The court first addresses whether Vazzano has standing.[8]

---

[8]The court must address RMS's jurisdictional challenge to constitutional standing before moving to the merits.  *See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc*., 702 F.3d 794, 799 (5th Cir. 2012).

- 5 -

A

The standing doctrine addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must meet both constitutional and prudential requirements. *See, e.g.*, *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014). RMS contends that Vazzano lacks constitutional standing, which requires that she establish that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Defs. of Wildlife*, 504 U.S. at 560). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

B

RMS contends that Vazzano lacks standing because she cannot show an injury in fact, an essential element of standing. RMS maintains that, after *TransUnion LLC v. Ramirez*, ___ U.S. ___, 141 S. Ct. 2190 (2021), Vazzano cannot simply point to a violation of the FDCPA to establish standing. And it maintains that she has not shown that she has otherwise suffered a concrete injury: in particular, she has not introduced evidence that she suffered mental

- 6 -

anguish damages.  RMS contends that the conclusory statements regarding mental anguish to which she testified at her deposition are insufficient to satisfy her burden of proof at this stage of the litigation.  RMS also posits that, contrary to Vazzano's contention, intrusion upon seclusion is not a common-law analogue to § 1692c(c) and therefore is not a basis for standing.

Vazzano responds that a violation of the FDCPA is sufficient of itself to confer standing, and, even if it is not, she has provided evidence of mental anguish.  For example, she testified in her deposition that she has suffered panic attacks, an elevated heart rate, loss of sleep, and diarrhea, and she has also suffered interrupted sleep, some memory lapses, and lack of concentration.  Alternatively, Vazzano contends that she also suffered an intangible harm of intrusion upon her seclusion: the November letter violated her privacy, and she felt harassed by it.

## C

The court must decide whether a reasonable jury could find that Vazzano suffered an injury-in-fact (the first element of standing).[9]

### 1

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent,

---

[9]The parties do not dispute the other elements of standing.

not conjectural or hypothetical.'"[10]  *Spokeo*, 578 U.S. at 339 (quoting *Defs. of Wildlife*, 504 U.S. at 560).[11]  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Id.* at 340.  Thus while an injury need not be tangible, it cannot be merely abstract or hypothetical.  *Id.* at 339-41; *TransUnion LLC*, 141 S. Ct. at 2204.  "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact."  *Spokeo*, 578 U.S. at 342.  "But deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *see also Spokeo*, 578 U.S. at 341 ("[Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").

In other words, to have suffered a "concrete" harm, Vazzano must identify a physical harm, monetary harm, or intangible harm (like a reputational harm) with "a close historical or common-law analogue for the[] asserted injury."  *TransUnion LLC*, 141 S. Ct. at 2204.

---

[10]"[W]hen [standing is] challenged by a motion for summary judgment, . . . evidence is required, including affidavits and other facts.  If such evidence is presented, whether controverted or not, it is accepted as true and survives summary judgment; if the evidence is controverted, standing must be supported adequately by the evidence adduced at trial."  *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009) (internal citation and quotation marks omitted) (quoting *Defs. of Wildlife*, 504 U.S. at 561).

[11]The parties do not dispute the "particularized" portion of the injury-in-fact inquiry.  While the plaintiff is required to show a "particularized" injury, there is no dispute here that Vazzano's receipt of the letter affected her in a personal and individualized way.  *See Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 462 (8th Cir. 2022) ("Rodenburg directly mailed documents to consumer debtor Ojogwu.  Thus, the alleged FDCPA violation was particularized, affecting him in a 'personal and individual way.'" (quoting *Defs. of Wildlife*, 504 U.S. at 560 n.1)).

The "most obvious" injuries are physical and monetary harms.  *Id.*  But Article III also recognizes intangible harms, such as "reputational harms, disclosure of private information, and intrusion upon seclusion."  *Id.*  Furthermore, in identifying a common law analogue for certain injuries, it is not necessary that an injury that is an "exact duplicate."  But this is not an "open-ended invitation for federal courts to loosen Article III . . . ."  *Id.*  The court must respect Congress' views, which are "instructive,"  *Spokeo*, 578 U.S. at 341, but Congress may not "simply enact an injury into existence . . . ."  *TransUnion LLC*, 141 S. Ct. at 2205 (quotation omitted).  An "injury in law is not an injury in fact."  *Id.*[12]

2

Vazzano first points to harm she suffered in the form of emotional distress and mental

---

[12]The court need not address Vazzano's contention that the statutory violation itself confers standing because Vazzano has standing on another ground.  But the court notes that, before the Supreme Court decided *TransUnion* in 2021, "[c]ourts across the country, including in the Fifth Circuit, . . . 'considered whether a violation of the FDCPA itself confers standing on a plaintiff, and they . . . answered that question in the affirmative.'" *Smith v. Moss L. Firm, P.C.*, 2020 WL 584617, at *4 (N.D. Tex. Feb. 6, 2020) (Fitzwater, J.) (quotation omitted).  After *TransUnion* was decided, however, the weight of authority has shifted.  *See Ojogwu*, 26 F.4th at 461-63; *Maddox v. Bank of N.Y. Mellon Tr. Co.*, 19 F.4th 58, 64 (2d Cir. 2021); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) (holding that standing "depends on whether the unwanted texts from AT&T caused [the plaintiff] concrete harm or were merely a technical violation of the statute"), *cert. denied*, 141 S. Ct. 2552 (2021); *see also Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021); *Brown v. Shapiro & Kreisman, LLC*, 2021 WL 5155673, at *1 (S.D. Tex. July 22, 2021) ("Plaintiff has neither alleged nor argued that Defendant's technical statutory violations confused or harmed her in any way."); *Dionisio v. S. Fin. Sys., Inc.*, 2022 WL 2825829, at *4 (S.D. Miss. May 25, 2022). *But see Almon v. Conduent Bus. Servs., LLC*, 2022 WL 902992, at *17-18 (W.D. Tex. Mar. 25, 2022) ("Even if Plaintiffs were required to show an injury beyond these violations of the EFTA and Regulation E . . . ."); *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 2021 WL 3639801, at *3 (W.D. Tex. Aug. 17, 2021).

anguish.  The parties devote the majority of their briefing to this issue.  The court begins by noting that *TransUnion* left open the questions now before this court: whether emotional damages suffice for standing and, if they do, what type of emotional damages count. *TransUnion* states that a "physical or monetary injury" or "intangible harm[]" such as "reputational harms, disclosure of private information, and intrusion upon seclusion" suffices for standing.  *See TransUnion LLC*, 141 S.Ct. at 2204.  And in a footnote, *TransUnion* discusses "emotional . . . harm," which it says may suffice for standing, potentially by analogy to the tort of intentional infliction of emotion distress, but on which it explicitly takes no position.  *Id.* at 2211 n.7 ("We take no position on whether or how such an emotional or psychological harm could suffice for Article III purposes—for example, by analogy to the tort of intentional infliction of emotional distress.").

    With *TransUnion* leaving the question open, precedent seems to offer insights: courts—especially in this circuit—have consistently held that evidence of emotional harm suffices for constitutional standing.  *See Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 169 (5th Cir. 2016) (suggesting that "emotional harm satisfies the 'injury in fact' requirement of constitutional standing"); *Mayfield v. LTD Fin. Servs., L.P.*, 2021 WL 4481089, at *4 (S.D. Tex. Sept. 30, 2021) (collecting cases).  Courts have found standing based on evidence of "anxiety[] and worry," *Smith v. Moss Law Firm, P.C.*, 2020 WL 584617, at *6 (N.D. Tex. Feb. 6, 2020) (Fitzwater, J.) ("Smith has at least produced evidence that would enable a reasonable jury to find that he had to deal with a lawsuit that improperly named him as a party, 'with its attendant legal costs, anxiety, and worry'" (citation omitted)), and "emotional

stress" and feeling "upset," *Kranz v. Midland Credit Management, Inc.*, 2020 WL 3899223, at *6 (W.D. Tex. July 10, 2020), among others.[13]  In particular, in the context of the FDCPA, courts have found emotional harm sufficient for Article III standing.  *Palmer v. Online Info. Servs., Inc.*, 2020 WL 7658063, at *5 (E.D. Tex. Nov. 9, 2020) ("Although the Fifth Circuit has not spoken on the issue, other courts have found that emotional distress constitutes an injury in fact under the FCRA and the FDCPA."), *rec. adopted*, 2020 WL 7388963 (E.D. Tex. Dec. 16, 2020).

But much of this case law is pre-*TransUnion*, and post-*TransUnion*, some courts have questioned whether specific types of emotional harm (like confusion, frustration, stress, etc.) suffice for standing purposes.  *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022); *Laufer v. Arpan LLC*, 29 F.4th 1268, 1272 (11th Cir. 2022) (holding that "frustration and humiliation" were not sufficiently similar analogues to intentional or negligent infliction of emotional distress); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (holding that "stress and confusion," "frustration," and worry were insufficient for standing); *Adler v. Penn Credit Corp.*, 2022 WL 744031, at *9 (S.D.N.Y. Mar. 11, 2022).  Dissenting judges and lower courts have noted tension in the case law—with some outright noting a circuit split on this issue.  *See Pierre*, 29 F.4th at 953, 955 (Hamilton, J., dissenting) (lamenting that the Seventh Circuit has rejected harms such as "anxiety, stress,

---

[13]*See also Ben-Davies v. Blibaum & Assocs., P.A.*, 695 Fed. Appx. 674, 676-77 (4th Cir. 2017) (per curiam) (holding that "emotional distress, anger, and frustration" were sufficient to establish an injury in fact); *Edeh v. Midland Credit Mgmt., Inc.*, 748 F.Supp.2d 1030, 1041 (D. Minn. 2010).

mental anguish and emotional distress" as a basis for Article III standing and noting a circuit split on this issue); *Pharms v. Nat'l Credit Sys., Inc.*, 2022 WL 2346623, at *5 (S.D. Ga. June 29, 2022) (citing *Huff v. Telecheck Servs., Inc.*, 923 F.3d 458, 463 (6th Cir. 2019)) (discussing tension in case law) .[14] This court notes, however, that this split does not appear to be on whether emotional harm can qualify *at all* but whether certain types of emotional harms—such as stress and confusion, which are seen as relatively insignificant—have a suitable common law analogue. *E.g.*, *Laufer*, 29 F.4th at 1272-73 (applying the *TransUnion* analysis and concluding that "frustration and humiliation" did not have a "close relationship" to intentional or negligent infliction of emotional distress).

The court need not resolve this tension today, however, because Vazzano offers an alternate theory for standing of which there is an easier analysis. Vazzano contends that she has provided evidence that she felt harassed by the unwanted November letter. This type of harm, she contends, is similar to an intrusion upon seclusion harm recognized at common law and is therefore sufficient to confer standing.

This theory has merit. *TransUnion* explicitly recognized the harms protected by the intrusion upon seclusion tort as an "intangible harm." *TransUnion LLC*, 141 S.Ct. at 2204. Indeed, "[a]t common law, courts readily recognized a concrete injury arising from the tort of intrusion upon seclusion—a tort protecting against defendants who intrude into the private

---

[14]Some courts have other interpretations of the state of the law as well. *E.g.*, *C.C. v. Med-Data Inc.*, 2022 WL 970862, at *8 n.4 (D. Kan. Mar. 31, 2022) ("*TransUnion* contemplates that allegations of emotional distress plus a risk of future harm may suffice to confer standing.").

solitude of another." *Lupia*, 8 F.4th at 1191 (citing Restatement (Second) of Torts § 652A(2)(a) (1977)). The question under *TransUnion* therefore is whether a reasonable jury could find that the type of harm Vazzano allegedly suffered (receiving an unwanted letter) has a "close relationship" to the type of harm protected by the common law tort of intrusion upon seclusion (protecting against intrusion into private solitude). *See TransUnion LLC*, 141 S.Ct. at 2204.

Post-*TransUnion*, courts have answered this question "Yes." Courts have held that receiving an unwanted letter or unwanted phone call has a "close relationship" to the harm posed by an intrusive invasion of privacy. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) ("The harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy."); *Lupia*, 9 F.4th at 1191 ("Lupia suffered a similar harm [to intrusion upon seclusion] when Medicredit made an unwanted call and left her a voicemail about a debt, despite her having sent written notice disputing the debt and requesting that it cease telephone communications."); *Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, ___ F.Supp.3d ___, 2022 WL 3130225, at *5 (E.D. Mich. Aug. 4, 2022); *Carter v. Capital Link Mgmt. LLC*, 2022 WL 2705250, at *8 n.9 (N.D. Ala. July 12, 2022); *Cross v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 193016, at *7 (W.D. Ark. Jan. 20, 2022); *see also Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021) (suggesting in another context that unwanted messages present privacy harms); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306 (11th Cir. 2020); *St. Pierre v.*

- 13 -

*Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 357-58 (3d Cir. 2018).[15]   In sum, a reasonable jury could find that Vazzano suffered a harm—invasion of privacy and harassment by receiving an unwanted letter—with a "close relationship" to the tort of intrusion upon seclusion, which protected against similar harms at common law.[16]

RMS responds that the tort of intrusion upon seclusion did not recognize *de minimis* intrusions—such as telephoning the plaintiff two or three times.   While this may be so, *TransUnion* made clear that Congress has the power to "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *TransUnion*, 141 S.Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341).   In other words, as then-Judge Barrett wrote for the Seventh Circuit in *Gadelhak* (which was cited in *TransUnion*), a slight injury, which of itself may not be  enough under the common law—but is the same *type* of harm recognized at common law—is sufficient for Article III purposes:

> The Eleventh Circuit treated the injury in its case as abstract partly because common law courts generally require a much more substantial imposition—typically, many calls—to support liability for intrusion upon seclusion. But when *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a "close relationship" in kind, not degree.   In other words, while the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy.   Congress's power is greater than that: it

---

[15]The court must also consider the "judgment of Congress" in determining standing. *Spokeo*, 578 U.S. at 340.  And "[i]n enacting the FDCPA, Congress recognized that abusive debt-collection practices may intrude on another's privacy interests."  *Lupia*, 8 F.4th at 1192.

[16]This is so despite the fact that RMS only sent one letter to Vazzano.  *See Lupia*, 9 F.4th at 1191.

- 14 -

> may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same *kind* of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable.

*Gadelhak*, 950 F.3d at 462 (emphasis and alteration in original) (citations omitted); *see also*

*Lupia*, 8 F.4th at 1192 ("[T]hough a single phone call may not intrude to the degree required

at common law, that phone call poses the same *kind* of harm recognized at common law—an

unwanted intrusion into a plaintiff's peace and quiet."); *Cross*, 2022 WL 193016, at *5

("[The court] is meant to look for whether the harm alleged bears a close relationship to the

kind of harm redressed by common law torts, not the degree or severity.").

Accordingly, the court holds that a reasonable jury could find that Vazzano suffered

an injury-in-fact, which satisfies the requirement that she has constitutional and prudential

standing.

## IV

The court next considers Vazzano's motion for partial summary judgment on her

§ 1692c(c) claim and RMS's cross-motion for summary judgment on the same claim.

## A

Vazzano posits that she gave RMS written notice of her refusal to pay a debt. This

written notice, Vazzano contends, triggered protections under § 1692c(c), and nothing in her

letter authorized RMS's subsequent November letter. Vazzano maintains that the November

letter did not fall into any of the exceptions to the no-contact requirement of § 1692c(c). And

she contends that it is clear that the November letter was seeking to collect a debt because it described ways for Vazzano to pay.

RMS responds that Vazzano's written notice did not contain "an unequivocal demand to cease *all* communications." D. Mot. (ECF No. 49) at 13 (emphasis in original). Rather it was a "dispute letter," *id.*, sent "in accordance with § 1692g(b)." *Id.* at 14. RMS posits that its November letter was a direct response to Vazzano's written notice, which included a dispute of the debt. According to RMS, if the court were to hold otherwise—i.e., that RMS could not send a verification letter—then RMS could not continue collecting the debt at all and would have been in a "frozen state." *Id.* at 16.[17]

## B

Section 1692c(c) provides that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt . . . the debt collector shall not communicate further with the consumer with respect to such debt" except in limited circumstances not applicable here.[18] In Vazzano's letter to RMS, she stated that she "refuse[d] to pay" the debt. P. App.

---

[17]RMS does not contend that the November letter fell within any of the permitted exceptions in § 1692c(c).

[18]The parties do not dispute the other elements of Vazzano's FDCPA claim. "[T]o prevail on an FDCPA claim, [Vazzano] must prove the following: (1) [s]he has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Hunsinger v. SKO Brenner Am., Inc*., 2013 WL 3949023, at *2 (N.D. Tex. Aug. 1, 2013) (Fitzwater, C.J.) (first alteration in original) (quotation omitted). The court holds that Vazzano has provided sufficient evidence to satisfy the first two elements: that she was the object of debt collection activity, and RMS is a debt collector as defined by the FDCPA.

(ECF No. 47) at 7.  According to Vazzano, she was protected under § 1692c(c) from further communications by RMS.  *See* § 1692c(c).

RMS disagrees.  It contends that Vazzano's letter had no "unqualified" refusal to pay or "unequivocal demand to cease *all* communications."  D. Mot. (ECF No. 49) at 13 (emphasis in original).[19] These arguments fail.

First, RMS does not specify what an "unqualified" refusal is—and it is hard to see how much more clear Vazzano could have been beyond saying that she "refuse[d] to pay." P. App. (ECF No. 47) at 7; *see Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) (holding that debt collector's letter violated § 1692c(c) after plaintiff stated that "I dispute this debt and refuse to pay"); *Bishop v. I.C. Sys., Inc.*, 713 F.Supp.2d 1361, 1367-68 (M.D. Fla. 2010); *Flores v. Collection Consultants of Cal.*, 2015 WL 4254032, at *5 (C.D. Cal. Mar. 20, 2015) ("Plaintiff's letter clearly stated 'I will not pay this debt.' It was not ambiguous on its face." (citation omitted)).  And, second, § 1692c(c) does not require a statement that Vazzano wanted to cease communications.  *See* § 1692c(c) (permitting refusal-to-pay language to trigger protection from further communication).

In the alternative, RMS also contends with some force that, even if §1692c(c) was

_____

[19]To support its argument, RMS plucks language from this court's prior memorandum opinion and order, *Vazzano v. Receivable Management Services, LLC* (*Vazzano I*), 2021 WL 3742618 (N.D. Tex. Aug. 24, 2021) (Fitzwater, J.), where the court stated that the "March 5, 2020 letter contains no request that RMS stop contacting Vazzano." *Id.* at *2.  But the court's statement was in response to Vazzano's contention (contained in an earlier complaint with different allegations) that she demanded that RMS stop contacting her. *See id.* Vazzano's current theory relies on the "refuse to pay" language in her letter.

triggered, RMS did not violate § 1692c(c) with its November letter.  It contends that Vazzano's statement in her letter (that she disputed the debt) permitted RMS to send verification of Vazzano's debt to her pursuant to § 1692g(b)—because if it could not do so, it would be in a "frozen state."

This argument proceeds as follows: § 1692g(b) provides that "[i]f the consumer notifies the debt collector . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt . . . ."  Here, Vazzano stated in the March 5, 2020 letter: "[p]lease be advised that alleged debt is hereby being disputed, your client is fully aware that no such funds are owed to them, thus I refuse to pay." P. App. (ECF No. 47) at 7.  So, RMS argues, until RMS sent Vazzano a verification of the debt, it could not continue collection of the debt (i.e., it could not sue for the debt).  But there is a problem: under § 1692c(c), RMS was precluded from communicating with Vazzano because she had stated that she "refuse[d] to pay" the debt. *Id.*  RMS therefore found itself in a bind: it could not collect the debt until it sent Vazzano verification, but it also could not send the verification.

Other courts have recognized this potential predicament. *E.g.*, *Marino v. Hoganwillig, PLLC*, 910 F.Supp.2d 492, 496 (W.D.N.Y. 2012) ("To hold [that the debt collector could not send a verification of the debt] would force HoganWillig into a frozen state where it could not seek to collect the debt because compliance with Section 1692g(b) would violate Section 1692c(c).").  And in response, some have identified an implicit waiver (despite § 1692c(c)) that allows the debt collector to "respond" to the debtor's dispute of the debt with verification

- 18 -

of the debt.  *See Recker v. Cent. Collection Bureau, Inc.*, 2005 WL 2654222, at \*4 (S.D. Ind. Oct. 17, 2005) ("Because verification is a statutorily required activity in order to resume collection activities, verification activities could be communications allowed implicitly under exception 1692c(c)(3).").[20]

Because RMS's arguments fail either way, the court will assume *arguendo*, as it did in *Vazzano v. Receivable Management Services, LLC* (*Vazzano II*), 2021 U.S. Dist. LEXIS 217502 (N.D. Tex. Nov. 10, 2021) (Fitzwater, J.), that the FDCPA permits a debtor to waive protections under § 1692c(c), *id.* at \*6, and will assume *arguendo* that a debtor's statement that the "alleged debt is hereby being disputed" is an implicit waiver of § 1692c(c), allowing the debt collector to send verification of the debt.  But even if RMS was permitted to send Vazzano a verification of the debt, a reasonable jury could find that the November letter went beyond that.

Some illustrations show why.  A verification letter including one sentence offering to discuss payment options does not exceed simply verifying the debt.  For example, in *Duby v. Shermeta, Adams & Von Allmen, P.C.*, 2012 WL 6705413 (E.D. Mich. Dec. 26, 2012), the

---

[20]Not all courts agree there is true tension here.  *See Schultz v. Sw. Credit Sys., LP*, 2017 WL 11457912, at \*10 (N.D. Iowa Oct. 13, 2017) (stating that debt collector could comply with both § 1692c(c) and § 1692g(b) by "(1) completely cutting off communications and abandoning collection of the debt; (2) sending the verification pursuant to § 1692g without an accompanying demand for payment, as discussed above; or (3) sending the verification pursuant to § 1692g while making a communication permissible under § 1692c(c)(1)-(c)(3)" (citations omitted)); *Crumel v. Kross, Lieberman & Stone, Inc.*, 2015 WL 1565432, at \*5-6 (E.D.N.C. Apr. 8, 2015) (same).  This court takes no position on this issue at this time.

plaintiff conceded that the debt collector could send a verification letter, but argued that one sentence in the cover letter that accompanied the verification, which offered "to discuss a payment plan or settlement of this matter," went beyond verification of the debt. *Id.* at *3. The *Duby* court, however, held that the letter did not violate § 1692c(c) because the letter was merely for verification purposes. *Id.* at *5.[21]

On the other hand, a letter containing a demand for payment and a statement that it is seeking to collect the debt exceeds simply verifying the debt. In *Schultz v. Southwest Credit System, LP*, 2017 WL 11457912 (N.D. Iowa Oct. 13, 2017), the plaintiff sent a letter stating that he disputed the debt and refused to pay. *Id.* at *3. The letter also requested validation. *Id.* The debt collector responded with a letter stating "[p]lease remit the balance in full to our office upon receipt of this letter" and "[t]his is an attempt to collect a debt by a debt collector." *Id.* The court held that whatever waiver was permitted by the plaintiff's dispute of the debt was exceeded by the request for payment and statement that the debt collector was attempting to collect a debt. *Id.* at *9-10 ("[T]he inclusion of the request to 'remit the balance in full' to SWC, alongside the warning that the May 13, 2015 Letter was 'an attempt to collect a debt by a debt collector,' outstripped the waiver that SWC received.").[22]

---

[21]*See also Abbott v. Second Round Sub, LLC*, 2017 WL 4296270, at *2 (W.D.N.Y. Sept. 28, 2017) ("[T]his Court can discern no language in Second Round's February 2017 Letter that seeks to collect on the debt or otherwise violates § 1692c(c)."); *Flores*, 2015 WL 4254032, at *7.

[22]*See also Marino*, 910 F.Supp.2d at 497.

Here, the November letter contained the debt verification, offered ways for Vazzano to pay her debt (by mail or phone), and stated that "[w]e are a debt collector attempting to collect a debt and any information obtained will be used for that purpose." P. App. (ECF No. 47) at 12. It was also sent nearly six months after Vazzano disputed the debt. This letter falls somewhere in between the letters in *Schultz* and *Duby*. This case is similar to *Schultz* in at least one way—in both cases the debt collector sent a letter stating "[t]his is an attempt to collect a debt by a debt collector." *Schultz*, 2017 WL 11457912, at *3. RMS's letter, however, does not contain the demand for payment "remit the balance in full" that was present in *Schultz*. *Id.* at *9. But what it *does* contain—a discussion of ways to pay, requirements for what to do with the payment—goes beyond a simple offer "to discuss a payment plan or settlement of this matter," as in *Duby*. *See Duby*, 2012 WL 6705413, at *3.

Nevertheless, the court can conclude that RMS's letter violated § 1692c(c) as a matter of law, with no need to submit a fact question to the jury to resolve.[23] If RMS is correct that Vazzano's dispute of the debt was an implicit waiver authorizing RMS to send verification of the debt, RMS went beyond the waiver. As discussed in *Vazzano II*, courts that have recognized waiver in the context of the FDCPA have held that the waiver is narrowly construed to the information requested. *Vazzano II*, 2021 U.S. Dist. Lexis 217502 at *9 n.11

---

[23]Although the letter's infractions "occurred only once and amounts to nothing more than one sentence of an otherwise-permissible communication, the court recognizes that the 'FDCPA is a strict liability statute and a consumer has only to prove one violation in order to trigger liability.'" *Crumel*, 2015 WL 1565432, at *6 (quoting *Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.2d 719, 725 (D. Md. 2011)).

- 21 -

("[C]ourts limit the waiver to the information requested.") (collecting cases); *Crumel*, 2015 WL 1565432, at \*5 ("[P]laintiff's request for verification constituted a waiver of his cease communication directive, but only with respect to the verification information."). And here, RMS plainly included more than verification of the debt in the November letter: "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed . . . ." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999). So even if RMS was permitted to contact Vazzano with a verification, the inclusion of payment options, procedures for how to pay, requirements for the payment, and a statement of "[w]e are . . . attempting to collect a debt" plainly went beyond any waiver Vazzano gave to receive verification of the debt.[24]

Accordingly, the court holds that Vazzano has met her heavy burden to show that no genuine issues of material fact exist, and that she is entitled to partial summary judgment establishing her § 1692c(c) claim.

V

The court next considers RMS's motion for summary judgment on Vazzano's § 1692f claim.

A

RMS maintains that Vazzano cannot prove one element of her § 1692f(1) claim: that

---

[24]Moreover, the November letter contained similar information as RMS's February letter, which is undisputedly a debt collection letter. *Compare* P. App. (ECF No. 47) at 4, *with id.* at 12; *see* D. Mot. (ECF No. 49) at 2 (conceding that RMS sent a "collection letter" to Vazzano in February).

the debt claimed by RMS was invalid.  RMS contends that it has provided evidence that Vazzano *did* owe a valid debt.  Vazzano responds that there is a fact issue on this question because she has provided evidence that she did not owe the debt.

B

The court concludes that there is a fact issue that precludes summary judgement on Vazzano's § 1692f claim.  Section 1692f provides that a debt collector violates the FDCPA if it collects or attempts to collect any amount of money "unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  RMS contends that it provided evidence that the amount it sought to collect was expressly authorized by the agreement between Progressive and Vazzano for an insurance policy.  Indeed, RMS has adduced evidence from a Progressive employee that Vazzano paid the first installment and failed to pay the second—thereby incurring the relevant debt.  Vazzano, however, has also produced evidence she did not pay the first installment.  First, she stated as much in her deposition.  And, second, she has provided evidence of a cancellation letter that Progressive sent Vazzano on November 29, 2019, stating that "you no longer have insurance with us, effective November 29, 2019 . . . ."  P. App. (ECF No. 47) at 18.

Accordingly, because there is evidence both that Vazzano paid, and did not pay, the initial installment for the Renewal Policy (which would have triggered the obligation to pay further installments), there is a genuine issue of material fact that precludes the entry of

- 23 -

summary judgment.  *See Anderson*, 477 U.S. at 248.[25]  The court therefore denies RMS's motion for summary judgment on Vazzano's § 1692f claim.

## VI

Finally, the court turns to RMS's motion for summary judgment on Vazzano's TDCPA claims.

## A

RMS contends that it is entitled to summary judgment on Vazzano's TDCPA claims because she has not shown actual damages.  Vazzano responds that she has provided evidence of mental anguish damages.

## B

"[T]he FDCPA and TDCPA are isomorphic (that is, they share the same general structure but are identified by different names) . . . ."  *Fiddick v. Bay Area Credit Serv., LLC*, 2019 WL 1858824, at *4 (S.D. Tex. Apr. 25, 2019).  "The conduct prohibited under the [TDCPA] is coextensive with that prohibited under the FDCPA, at least insofar as the same actions that are unlawful under the FDCPA are also unlawful under the [TDCPA]."  *Ortiz v. Enhanced Recovery Co.*, 2019 WL 2410081, at *6 (N.D. Tex. June 6, 2019) (Fitzwater, J.) (alterations in original) (internal quotation marks and citation omitted).  When neither

---

[25]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

party offers any authority for interpreting the TDCPA provisions at issue, the court will rule consistently on the same grounds for the TDCPA as it does for the FDCPA. *Id.*[26]

RMS contends that, under the TDCPA, Vazzano must show actual damages and the record establishes there were no damages.[27]   The court denies RMS's motion for summary judgment. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) ("[M]ental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish . . . .").[28]  Vazzano has presented evidence that she suffered from panic attacks, stress, anxiety, and an elevated heart rate.   She has also produced evidence that she has suffered disruptions of her sleep and needed prescription medication to control her blood pressure.  She has also offered proof that she suffered disruption in sleep "almost nightly" and suffered her other symptoms sporadically since November 2020.  The court therefore holds that a reasonable jury could find that Vazzano suffered actual damages due to mental anguish. *See Anderson v. Durant*, 550 S.W.3d 605, 620 (Tex. 2018) (determining plaintiff had shown mental anguish damages

---

[26]To the extent RMS argues that it should be awarded summary judgment on Vazzano's TDCPA claim for the same reasons that entitle it to summary judgment on Vazzano's FDCPA claim, this argument fails because the court has rejected RMS's arguments for summary judgement on Vazzano's FDCPA claims. *See supra* § V.

[27]Because it is not in dispute, the court assumes *arguendo* that a plaintiff under the TDCPA or FDCPA must show actual damages.

[28]The court notes that Vazzano's deposition is at times somewhat unclear regarding the extent to which some of her emotional distress is attributable to the November letter rather than to other causes  But, as discussed, "the Court cannot hold that no reasonable jury could award [Vazzano] damages for emotional distress.  Any such damages are likely to be very small . . . ." *Edeh*, 748 F.Supp.2d at 1042.

where plaintiff had trouble sleeping, anxiety, worry, lack of focus, and otherwise was disrupted in his life); *Reyelts v. Cross*, 968 F.Supp.2d 835, 846-47 (N.D. Tex. 2013) (Cureton, J.) (determining that plaintiff had demonstrated mental anguish damages when she showed, *inter alia*, that she felt devastated and afraid, had trouble sleeping, had stomach pain, increased medication, and had less money for son's wedding), *aff'd*, 566 Fed. Appx. 316 (5th Cir. 2014).[29]

\* \* \*

Accordingly, for the reasons explained, the court grants Vazzano's motion for partial summary judgment and denies RMS's motion for summary judgment.[30]

**SO ORDERED**.

August 12, 2022.

SIDNEY A. FITZWATER
SENIOR JUDGE

---

[29]As noted, *see supra* note 25, "[w]hen this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho*, 658 F.Supp.2d at 812 n.8 (citing *Swicegood*, 2003 WL 22234928, at \*17 n.25).

[30]The court overrules Vazzano's objection to the Waddell Declaration as moot.

- 26 -