IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| APRILE VAZZANO, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | Civil Action No. 3:21-CV-0825-D |
| § | |
| RECEIVABLE MANAGEMENT § | |
| SERVICES, LLC, and RLI § | |
| INSURANCE COMPANY, § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Days after the court issued its August 12, 2022 memorandum opinion and order in this case, *Vazzano v. Receivable Management Services, LLC* (*Vazzano III*), 2022 WL 3349149 (N.D. Tex. Aug. 12, 2022) (Fitzwater, J.),[1] the Fifth Circuit decided *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816 (5th Cir. 2022). In light of *Perez*, the court requested supplemental briefing on whether it should alter or amend *Vazzano III*. For the following reasons, the court concludes that *Vazzano III* should not be altered or amended.

I

In *Perez* the Fifth Circuit held that the plaintiff did not have standing to sue under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 *et seq.*, particularly § 1692e, to challenge the debt collection practices of a law firm acting on behalf of the City of College

---

[1] The court assumes the parties' familiarity with *Vazzano III* and will not recount its holdings at length.

Station. *Perez*, 45 F.4th at 823. To establish that she has standing, a plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, the burden is on the plaintiff to allege sufficient facts to demonstrate each element of standing. *Id*. Like the instant case, *Perez* involves the first element: factual injury.

The plaintiff in *Perez* advanced five theories of injury-in-fact, and the panel deemed none of them to be sufficient. Of particular relevance to the instant case was the plaintiff's final basis for asserting standing: that her "receipt of an unwanted letter caused her to suffer a concrete injury analogous to the tort of intrusion upon seclusion." *Perez*, 45 F.4th at 825. In evaluating whether this was a sufficient ground for standing, the panel emphasized that "Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id*. at 822 (quoting *Spokeo*, 578 U.S. at 341) (internal quotation marks omitted). But the panel ultimately held that "Congress *didn't* elevate the receipt of a single, unwanted message to the status of a legally cognizable injury in the FDCPA." *Id*. at 826. The panel held that the plaintiff lacked standing under this theory because she had brought suit against the defendant "for violating the statute's antifraud provision"—a provision animated, not by the desire to protect consumer privacy, but by "Congress's concern in prohibiting 'false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." *Id*.

The panel also noted that Congress had addressed issues relating to consumer privacy

in a separate provision of the FDCPA: § 1692d. Because the plaintiff did not sue under that provision, she could not "bootstrap the harms it recognizes as actionable to demonstrate standing to sue based on a different provision." *Id*. And, in any event, § 1692d "doesn't recognize that a single unwanted message qualifies as a concrete harm" because "its closest analog to an unwanted letter—unwanted telephone calls—must be made 'repeatedly or continuously.'" *Id*. "Accordingly, even if Congress could elevate a single unwanted message to the status of a concrete injury, it hasn't done so here." *Id*. The plaintiff therefore lacked standing to sue.

*Perez* thus appears to contemplate two elements of factual injury in the context of the FDCPA, and the absence of either element will compel the conclusion that the plaintiff lacks standing, as was the case in *Perez*. The first element is what Congress actually did: did the legislature exercise its power to "elevate a single unwanted message to the status of a concrete injury?" *Id*. The second element is why Congress did so: was the provision in which Congress did—or did not—create a cognizable injury-in-fact motivated by concerns regarding consumer privacy, as was § 1692d, or was it animated by other interests, as was § 1692e?

The *Perez* panel rejected the plaintiff's standing argument with respect to § 1692e because that provision did not relate to consumer privacy, and thus was not intended to create a cause of action for an injury akin to intrusion upon seclusion. *Id*. And the plaintiff would not have had standing under § 1692d because, while that provision *was* concerned with consumer privacy, it did not contain language indicating that Congress intended to make

- 3 -

cognizable an injury that was inadequate at common law. *Id*. Because neither provision satisfied both of these elements, a plaintiff who sued based on the receipt of a single unwanted communication would not have standing based upon an intrusion-upon-seclusion theory.

II

Vazzano, like the plaintiff in *Perez*, argues in part that her factual injury is based on the common-law tort of intrusion upon seclusion, but her claim is predicated on a different provision of the FDCPA: 15 U.S.C. § 1692c. The *Perez* panel did not consider § 1692c, so the question becomes whether this provision satisfies the two elements outlined in *Perez*.[2]

Textual differences between § 1692c and § 1692d suggest that § 1692c *was* actually intended to "elevate a single unwanted message to the status of a concrete injury." *Id*. The text of § 1692c(c) provides that when "a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further

---

[2]This is true despite the fact that the *Perez* panel referred to the FDCPA as a whole rather than to the specific provisions discussed in that case. *Perez*, 45 F.4th at 826 ("The answer is that Congress *didn't* elevate the receipt of a single, unwanted message to the status of a legally cognizable injury in the FDCPA."). The Fifth Circuit has held several times that cases involving one provision of a larger statute are not necessarily binding on cases involving a different provision of the same statute. *See, e.g.*, *Dantagnan v. I.L.A. Local 1418, AFL-CIO*, 496 F.2d 400, 402 (5th Cir. 1974) (holding that a prior case was not dispositive in a later case because it "involved a different section of [the Labor Management Reporting and Disclosure Act of 1959]—and a different type of claim—from the case sub judice"); *Johnson v. Hous. Auth. of Jefferson Par.*, 442 F.3d 356, 366 (5th Cir. 2006) ("The Housing Authority's reliance on *Banks* is misplaced: The statutory provision at issue in that case does not even resemble the one that Plaintiffs-Appellants seek to enforce here."); *Am. Forest & Paper Ass'n v. EPA*, 137 F.3d 291, 298 (5th Cir. 1998) ("*AISI* is distinguishable, however, in that the case arose under a different provision of the [Clean Water Act].").

communication with the consumer, *the debt collector shall not communicate further* with the consumer with respect to such debt." 15 U.S.C. § 1692c(c) (emphasis added). Unlike the language of § 1692d that the *Perez* panel cited—that unwanted communications must be made "repeatedly or continuously"—this provision does not dictate that a violation occurs only when there are multiple post-notice attempts to communicate. This difference undercuts the extent to which the *Perez* panel's conclusion that "Congress *didn't* elevate the receipt of a single, unwanted message to the status of a legally cognizable injury" governs the instant case. *See Perez*, 45 F.4th at 826.

Indeed, the *Perez* panel acknowledged that, because "the harms elevated by Congress need only be similar 'in kind, not degree,' . . . it seems to follow that a single unwanted communication *could* qualify as a concrete injury even though intrusion upon seclusion requires many." *Id.* (emphasis added) (quoting *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020)). According to *Perez*, Congress simply did not provide as much in § 1692d. *Id.* Relatedly, some district courts have concluded that one communication is alone sufficient to violate § 1692c. *See, e.g.*, *Leahey v. Franklin Collection Serv., Inc.*, 756 F.Supp.2d 1322, 1327 (N.D. Ala. 2010); *Bankston v. PhyCom Corp.*, 2008 WL 4412252, at *1 (N.D. Cal. Sept. 25, 2008). Accordingly, the plain text of § 1692c indicates that Congress did elevate the receipt of a single unwanted post-notice message to the status of a legally cognizable injury in the context of this provision.

Additionally, while § 1692e, as interpreted in *Perez*, was intended to prevent "the economic harms that consumers suffered due to aggressive and unfair attempts to collect

their debts," *Perez*, 45 F.4th at 826, the harms Congress intended to prevent in enacting § 1692c are more related to consumer privacy. Section 1692c(a) prohibits communications at inconvenient times and at the consumer's place of employment and requires that debt collectors who know that a consumer is represented by an attorney communicate with the attorney rather than directly with the consumer. Section 1692c(b) strictly limits communication regarding a debt with parties other than the debtor. These prohibitions are certainly aimed, at least in part, at guarding a consumer's privacy.

And even § 1692c(c)—the provision implicated in the instant case—regulates types of communications that have a "close relationship" to the harm posed by an invasion of privacy. *Gadelhak*, 950 F.3d at 462. Section 1692c is at least animated both by the desire to protect consumer privacy and by the desire to avoid the economic and interpersonal hardships that abusive debt collection practices can produce. *See* 15 U.S.C. § 1692(a).

Accordingly, § 1692c possesses the factors highlighted by the *Perez* panel: it contains language indicating Congress' intent to "elevate a single unwanted message to the status of a legally cognizable injury," and it pertains to consumer privacy such that its purpose is at least partly to prevent the kinds of harms associated with invasion of privacy torts like intrusion upon seclusion. For that reason, *Perez* did not undermine this court's conclusion that Vazzano has standing to bring the instant action based upon her intrusion-upon-seclusion theory of factual injury.

\*   \*   \*

For the reasons explained, the court concludes that *Vazzano III* should not be altered or amended .

**SO ORDERED**.

December 2, 2022.

                                                                            _____
SIDNEY A. FITZWATER
SENIOR JUDGE